Appeal of THE HOOVER-BOND CO.          Docket No. 986.

The Board is without authority to require the Commissioner to permit the filing of returns and the computation of income and profits taxes, under the provisions of article 42 of Regulations 45, since such returns, if filed, would not "clearly reflect the income" of the taxpayer and the method of computing income provided in that article does not conform to section 200 of the Revenue Act of 1918. *Appeal of B. B. Todd, Inc.*, 1 B. T. A. 762, and *Appeal of H. B. Graves Company, Inc.*, 1 B. T. A. 859, cited and approved.

Submitted February 21, 1925; decided April 6, 1925.

*Walter S. Jackson, Esq.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

The taxes involved in this appeal are income and profits taxes for the years 1917 and 1918 in the amount of $25,602.91. The questions presented for determination are, whether the taxpayer has kept such books and records as would enable the taxpayer and the Commissioner to compute the taxpayer's taxable income upon the basis permitted by article 42 of Regulations 45, and if so, whether this Board should properly recognize such basis as being one "made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

FINDINGS OF FACT.

1. The taxpayer is an Ohio corporation which was organized and began business on January 1, 1913. It was the sucessor of a partnership of the same name which was organized in 1898. It was engaged in the business of selling furniture at retail and operated stores in Ohio and Michigan. During the years 1917 and 1918 there were six such stores in operation. The sales made by the taxpayer were on the basis of (a) cash sales, and (b) installment plan sales. During the year 1917 and 1918 the sales made on the

61359°—26——59

installment basis constituted approximately 80 per cent of the total sales.

2. The goods sold on the installment plan remained the property of the taxpayer by the terms of its installment sale contract. Upon failure of the purchaser to pay any of the agreed payments, the taxpayer might repossess the property. The system of recording sales was as follows: At the time of making sale the salesman secured the approval of the manager. From a sales slip which is made at the time of the transaction, an invoice is prepared in duplicate showing the terms of the sale and the selling price of the goods. This is signed by the purchaser and constitutes the contract of sale. The purchaser receives the duplicate copy, while the original is retained by the taxpayer as a basis for the charge against the purchaser. The cost of the goods to the taxpayer is noted in code and the sales are taken into the charge accounts of the taxpayer by serial numbers corresponding to the number indicated on the purchaser's contract. There is also carried into this account a record of the selling price of the goods sold. At the end of each day a summary is taken of the amount of sales made for the day as well as a summary of the cost of the goods sold that day.

3. At the time of the sale the purchaser is required to make a cash down payment which is referred to as the " delivery payment." A special receipt book is kept for recording these payments and the purchaser is given a duplicate receipt therefor and such payment is credited to the purchaser's account. These receipts go to the cashier and are entered in the cash book as a credit to the purchaser and from there they are carried into the daily sales record to apply against the charge made therein for the selling price. At the end of each day the gross profits for each day are computed from this record. A complete record of daily expenses is kept and totaled for each day and this amount is carried to the daily sales record above referred to. In this way the taxpayer computed each day's business in each store so as to show each day as a completed unit. The aggregate of the days in each month constituted the profits for the month. Individual sales were not considered in determining the gross or net profits on sales, but instead the aggregate sales for the year were used. This was done by subtracting, at the end of the year, the cost of goods from the selling price of goods. The percentage of gross profits was the ratio between the sales and the profit.

4. At the close of the year an inventory was made of all installment sales accounts. The difference between the balance as at the beginning and end of the year for each year's installment sales represented collections, and the percentage of profits applied thereto furnished the realized profit on such collections while the percentage of profit applied to the balance at the end of the year furnished the unrealized profit. No entry was made on the books of the company covering unrealized profits. The books of the company do not contain the percentages of realized or unrealized profits but the taxpayer after the close of the year determined such percentages and then allocated them to the accounts. The books of the taxpayer were not finally closed into a general ledger on the basis of the installment system at the end of the year 1917, nor at the end of the year 1918. That is to say, no completed system of installment ac-

countancy was maintained in the sense that an unrealized profit account was set up. To ascertain these unrealized profits on installment sales it was necessary to go through the books of original entry and construct such accounts therefrom. The taxpayer contends that from information readily obtainable, as to allocation of balance at the end of each year and percentage of gross profit in each year, the amount of unrealized profit at the end of any year can be readily ascertained. The Commissioner denies this and asserts that the records of taxpayers are not susceptible of accurate analysis on the basis of installment sales accountancy. The record is very conflicting on this point and we quote from the record the statement made at the hearing by taxpayer's representative:

The records kept by this company were very crude. No double entry system of bookkeeping was carried on, and no double entry system of books was maintained. There was no general ledger and consequently no capital accounts were recorded. Inventory starts the year, apparently, at December 31, 1916, and ends December 31, 1917. That inventory contains a statement as to the assets, liabilities, and merchandise inventory, liabilities in detail, and according to the classes of stock. The information on the return indicates that the person who executed the 1917 return was Mr. D. H. Bond who knew very little about it. They carried the business along themselves. The amount of the income reported by the corporation on its original income tax return was about one-third of the amount of the net income as reflected in the financial statement for that year. We contend that Mr. Bond endeavored to file this return on the installment basis, but, not knowing exactly what that meant, did so to the best of his ability, and the indications are that he tried to make some adjustment as between the cost of goods sold, the amount collected, and the actual profits made. This shows a variation, of course, as compared with the return when filed or made on the closed sales basis. From the record kept it would be impossible to try to identify the goods from the invoices. They were not kept properly.

5. The Commissioner determined that the taxpayer had not filed its returns on the installment sales basis as contemplated by article 42 of Regulations 45 and that the taxpayer's books of account were not kept on that basis. He accordingly denied the taxpayer a computation of its taxable income on the installment sales basis and determined a deficiency in tax to exist for the years 1917 and 1918. The taxpayer was advised of such determination of the Commissioner by statutory registered letter dated October 11, 1924, from which the taxpayer appealed to this Board. Petition was filed December 8, 1924.

## DECISION.

The determination of the Commissioner of a deficiency in the sum of $13,108.87 for the year 1917, and $12,494.04 for the year 1918, is approved.

## OPINION.

KORNER, *Chairman:* The record in this appeal is far from convincing that taxpayer kept its books of account on the installment plan basis or that, from the records it did keep, a complete system of installment sales accountancy is susceptible of being evolved. We are far from persuaded that the computations made by the taxpayer correctly reflect the results obtained under the bookkeeping methods prescribed by article 42 of Regulations 45, as interpreted and modified by Treasury Decision 3082 and subsequent rulings of the Commissioner. However, in view of the fact that our decision

in this appeal is controlled by the decision of this Board in the *Appeal of B. B. Todd, Inc.*, 1 B. T. A. 762, it is not necessary to discuss at length the phase of this appeal just referred to.

Upon the authority of *Todd's Appeal, supra*, and *Graves' Appeal*, 1 B. T. A. 859, the determination of the Commissioner is approved.